UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:15-cv-116-RJC

| ROBERTA NAYLOR, | ) | |
|---|---|---|
| Plaintiff. | ) | |
| v. | ) | ORDER |
| WELLS FARGO HOME MORTGAGE, INC.; WACHOVIA BANK, N.A.; WELLS FARGO ASSET SECURITIES COPRORATION, as Trustee for Wells Fargo Mortgage Backed Securities 2003-J Trust; MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC. a/k/a MERS, and JOHN DOES 1 through 100, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**THIS MATTER** comes before the Court on Plaintiff Roberta Naylor's ("Plaintiff") Motion for Declaratory Relief, Injunction, and Temporary Restraining Order, (Doc. No. 2); and Defendants Wells Fargo Home Mortgage, Inc., Wachovia Bank, N.A., Wells Fargo Asset Securities Corporation, and Mortgage Electronic Registration System, Inc.'s (collectively, "Defendants") Motions to Dismiss and Motion to Strike, (Doc Nos. 21, 26). The motions have been fully briefed and the issues are ripe for adjudication.

I. BACKGROUND

On August 18, 2003, Plaintiff's husband, Paul Naylor, executed a promissory note (the "Note") in the amount of $279,900.00 payable to Wells Fargo Home Mortgage, Inc.[1] (Doc. No. 17-7 at 2). Plaintiff was not a party to the Note, but Plaintiff and her husband executed a Deed of

---

[1] In 2004, Wells Fargo Home Mortgage, Inc. merged into and became Wells Fargo Bank, N.A. ("Wells Fargo"). (Doc. No. 17-7 at 2).

Trust recorded in Book 16542, Page 909 of the Mecklenburg County Register of Deeds to secure the Note (the "Deed of Trust") on the same day.  (Doc. No. 17-3).  The security under the Deed of Trust was property located at 9006 Morgan Downs Court, Charlotte, North Carolina 28270.  (Id.).  At some point, Plaintiff's husband stopped making payments and defaulted on the Note.  (Doc. No. 17-7 at 3).

A foreclosure proceeding was instituted in Mecklenburg County.  On August 16, 2012, the Mecklenburg County Clerk of Court conducted a foreclosure hearing and entered an order allowing the foreclosure to proceed (the "Foreclosure Order").  (Doc. No. 17-5).  Among other things, the Foreclosure Order states the following findings: (1) Wells Fargo is the holder of the Note; (2) the Note is a valid debt owed to Wells Fargo; (3) Plaintiff and her husband are in default under the Note and Deed of Trust; and (4) Wells Fargo has the right to have the Deed of Trust foreclosed under the power of sale contained therein.  (Id.).

Plaintiff and her husband appealed the Foreclosure Order to the North Carolina Superior Court, Mecklenburg County, (Doc No. 17-6), and a Superior Court judge heard the appeal at a hearing on July 8, 2013.  (Doc. No. 17-7).  On July 11, 2013, the Superior Court judge entered an order allowing the foreclosure sale to proceed.  (Id.).  Plaintiff and her husband then appealed the Superior Court's Order, but the appeal was ultimately dismissed on January 22, 2014.  (Doc. No. 17-8).

The subject property was sold at a foreclosure sale on October 28, 2013, (Doc. No. 17-9), and the sale was confirmed ten days later on November 7, 2013.  Plaintiff and her husband subsequently moved to set aside the foreclosure sale.  However, the Mecklenburg County Superior Court denied that motion in an order dated January 28, 2014, because it concluded that the statutory requirements for conducting a foreclosure sale were met in all material respects.

(Doc. No. 17-10). Plaintiff and her husband appealed the January 28, 2014 Order, and that appeal was dismissed on April 29, 2014. (Doc. No. 17-11).

Plaintiff, proceeding pro se,[2] filed her Complaint in this action on March 9, 2015, (Doc. No. 1), along with her Motion for Declaratory Relief, Injunction, and Temporary Restraining Order, (Doc. No. 2).[3] In general terms, Plaintiff challenges the title and ownership of the property in question, seeking damages, rescission, declaratory judgment, and injunctive relief. Specifically, Plaintiff asserts claims for: (1) lack of standing/wrongful foreclosure; (2) fraud in the concealment; (3) fraud in the inducement; (4) intentional infliction of emotional distress ("IIED"); (5) slander of title; (6) quiet title; (7) declaratory relief; (8) violation of the Truth in Lending Act ("TILA") and the Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. § 1601; (9) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601; and (10) rescission. (Doc. No. 1).

Although Plaintiff alleges improprieties, fraud, and misconduct by Defendants and claims the "foreclosure sale was obtained by perjured testimony and false evidence resulting in intrinsic fraud on the court and the Plaintiff," her claims all stem from her core challenge to "the validity of [Wells Fargo's] allegation that it was the owner and holder of the note." (Doc. No. 23 at 5–6). Specifically, Plaintiff alleges that Defendants "cannot show proper receipt, possession, transfer, negotiations, assignment and ownership of the borrower's original Promissory Note and

---

[2] The Court notes that as of December 9, 2015, Plaintiff is represented by counsel. (Doc. No. 30). However, Plaintiff's Complaint, motion, and legal memoranda were filed by Plaintiff when she was proceeding pro se. Therefore, the Court construes those pleadings as such.

[3] The Court also notes that, although not a plaintiff in this case, Plaintiff's husband, Paul Naylor, recently attempted to remove the underlying state court proceeding to this Court in a separate action, alleging violations under 42 U.S.C. § 1983. That case was remanded, and the case was closed. Wells Fargo v. Naylor, No. 3:15-cv-564-RJC (W.D.N.C. Dec. 8, 2015), ECF No. 4.

Mortgage/Deed of Trust, resulting in imperfect security interests and claims." (Doc. No. 1 ¶25).

Before Defendants filed an Answer or responded to Plaintiff's motion for injunctive relief, Plaintiff filed another Motion for Temporary Restraining Order on March 18, 2015. (Doc. No. 12). On April 14, 2015, the Court entered an Order denying that Motion for Temporary Restraining Order. (Doc. No. 20). Defendants then filed their Motions to Dismiss and Motion to Strike. (Doc Nos. 21, 26).

## II. STANDARD OF REVIEW

The existence of subject-matter jurisdiction is a threshold issue a court must address before considering the merits of any case. Therefore, the Court must first address Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 88–89 (1998); Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). "The subject-matter jurisdiction of federal courts is limited and the federal courts may exercise only that jurisdiction which Congress has prescribed." Chris v. Tenet, 221 F.3d 648, 655 (4th Cir. 2000). Subject-matter jurisdiction is so limited that federal "[c]ourts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010). "No party can waive the defect, or consent to [subject-matter] jurisdiction. No court can ignore the defect; rather a court, noticing the defect, must raise the matter on its own." Wis. Dept. of Corrections v. Schacht, 524 U.S. 381, 389 (1998) (internal citations omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 671 (2009) ("Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt."). The party seeking federal jurisdiction has the burden of proving that subject-matter jurisdiction exists. Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

A motion to dismiss for failure to state a claim challenges the legal sufficiency of a complaint. When considering such a motion, a court must accept the factual allegations of the claim as true and construe them in the light most favorable to the nonmoving party. Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 189 (4th Cir. 2010). To survive the motion, the "complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To be "plausible on its face," a plaintiff must demonstrate more than "a sheer possibility that a defendant has acted unlawfully." Id. A plaintiff, therefore, must "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling [it] to relief, i.e., the 'plausibility of entitlement to relief.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 557). Although courts must liberally construe pro se complaints, Erickson v. Pardus, 551 U.S. 89, 94 (2007), conclusory statements with insufficient factual allegations, even when asserted by a pro se plaintiff, will simply not suffice.

### III. DISCUSSION

Plaintiff's claims can be divided into three groupings: (A) those for which the Court lacks subject-matter jurisdiction; (B) those for which Plaintiff lacks standing; and (C) those that are time-barred. The Court will analyze each grouping in turn.

#### A. Subject-Matter Jurisdiction

Where the Court has subject-matter jurisdiction, it may hear the merits of a claim; if it lacks jurisdiction, it has no authority to hear the case. Fed. R. Civ. P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."). Congress has authorized federal courts to exercise subject-matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties

of the United States." 28 U.S.C. § 1331. Federal district courts, however, have no authority to hear appeals of the decisions of state courts; only the Supreme Court possesses such authority. See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923). Additionally, federal district courts have no jurisdiction to hear "challenges to state court decisions in particular cases arising out of judicial proceedings." D.C. Ct. of Appeals v. Feldman, 460 U.S. 462, 483 n.16, 486 (1983). These rulings form the basis of the Rooker-Feldman doctrine. Where it applies, it bars federal district courts from hearing cases.

The Rooker-Feldman doctrine applies not only to issues actually presented to and decided by a state court but also to issues that are "inextricably intertwined" with questions ruled on by a state court regardless of whether those issues or claims were raised before the state court. Id. A federal claim is inextricably intertwined with a state court decision where, "in order to grant the federal plaintiff the relief sought, the federal court must determine that the [state] court judgment was erroneously entered or must take action that would render the judgment ineffectual." Jordahl v. Democratic Party of Va., 122 F.3d 192, 202 (4th Cir. 1997). As such, this Court and other courts have held that Rooker-Feldman prohibits a plaintiff from asserting federal claims attacking a state court foreclosure action. See, e.g., Dillard v. Bank of N.Y., 476 F. App'x 690 (10th Cir. 2012); Steele v. Capital One Home Loans, LLC, No. 3:13-cv-704-RJC-DSC, 2014 WL 3748928 (W.D.N.C. July 30, 2014), aff'd, 594 F. App'x 215 (4th Cir. 2015); Radisi v. HSBC Bank USA, Nat. Ass'n, No. 5:11-cv-125-RLV, 2012 WL 2155052 (W.D.N.C. June 13, 2012), aff'd, 479 F. App'x 468 (4th Cir. 2012).

Plaintiff argues at great length that Defendants fraudulently brought the foreclosure action and that Defendants are not the valid holder of the Note, and the majority of her claims are based upon this core allegation. However, that is precisely the issue that the state court has

already decided. As Plaintiff notes, pursuant to North Carolina General Statute section 45-21.16(d), one of the elements a North Carolina court must find to authorize foreclosure is that the party seeking to foreclose is the lawful holder of a valid debt. That statute goes on to provide that "[t]he act of the clerk in so finding or refusing to so find is a judicial act . . . ." N.C. Gen. Stat. § 45-21.16(d1). Consequently, Wells Fargo's status as the lawful holder of the Note was judicially established by the state court's Foreclosure Order. Any ruling by this Court in favor of Plaintiff as to her claims attacking the foreclosure, therefore, would require the Court to overturn the Foreclosure Order, which Rooker-Feldman expressly prohibits.

Plaintiff also argues that Defendants committed fraudulent actions before and during the foreclosure proceedings. As North Carolina statute provides, the Foreclosure Order is properly appealed in the state court system. N.C. Gen. Stat. § 45-21.16(d1). Plaintiff and her husband had the opportunity to and did in fact appeal the Foreclosure Order, but those appeals have either been dismissed or denied. Plaintiff's opportunity to show Defendants' fraud and pursue those claims, therefore, was in the state court action. See Dillard, 476 F. App'x 690 (dismissing a fraud claim of improper documents and deceptive representations in a foreclosure action under the Rooker–Feldman doctrine). Plaintiff cannot now attempt to collaterally attack the Foreclosure Order through this federal lawsuit.[4]

Finally, Plaintiff contends, in reliance upon an exception articulated in Kougasian v. TMSL, Inc., 359 F.3d 1136 (9th Cir. 2004), that Rooker-Feldman does not apply to this case. In

---

[4] Similarly, in her Response in Opposition to Defendants' Motion to Dismiss, Plaintiff seems to assert a motion for relief from judgment pursuant to Rule 60 of the North Carolina Rules of Civil Procedure, N.C. Gen. Stat. § 1A-1. (Doc. No. 23). A motion for relief from a state court judgment under the North Carolina Rules of Civil Procedure is properly addressed to the North Carolina trial court. See Sink v. Easter, 217 S.E.2d 532, 541–42 (N.C. 1975). Accordingly, this Court lacks subject-matter jurisdiction to review such a motion.

Kougasian, the Ninth Circuit held that the doctrine does not apply when the plaintiff seeks relief from a state court judgment on the basis of extrinsic fraud by the defendants in the state court proceedings. Id. at 1140–41. "Extrinsic fraud is conduct which prevents a party from presenting his claim in court." Wood v. McEwen, 644 F.2d 797, 801 (9th Cir. 1981); see also Stokley v. Stokley, 227 S.E.2d 131, 134 (N.C. Ct. App. 1976) ("Fraud is extrinsic when it deprives the unsuccessful party of an opportunity to present his case to the court."). Plaintiff, however, has failed to allege sufficient facts indicating Defendants perpetrated an extrinsic fraud on the state court. In fact, later in her memorandum, Plaintiff argues that Defendants perpetrated intrinsic fraud on the state court. (Doc. No. 23 at 5). Therefore, the Court finds that the extrinsic fraud exception to the Rooker-Feldman doctrine does not apply in this case.

The Court finds that any ruling by this Court in favor of Plaintiff as to her claims attacking the Foreclosure Order would require the Court to overturn the state court's judgment. Therefore, to the extent Plaintiff's claims attack the Foreclosure Order or seek relief stemming from the state court foreclosure proceedings, the Court finds that they are barred by the Rooker-Feldman doctrine because they are inextricably intertwined with the state-court judgment.[5] Consequently, the Court lacks subject-matter jurisdiction, and Plaintiff's claims for lack of standing/wrongful foreclosure; fraud in the concealment; fraud in the inducement; intentional infliction of emotional distress;[6] slander of title; quiet title; declaratory relief; and rescission

---

[5] "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Allen v. McCurry, 449 U.S. 90, 94 (1980). The state court has decided issues of fact and law and rendered a final judgment on the merits of these claims. The Court further finds, therefore, in addition to the Rooker-Feldman doctrine, that these claims are barred by the doctrines of res judicata and collateral estoppel.

[6] Even if jurisdiction were to exist as to Plaintiff's IIED claim, Plaintiff has failed to

pursuant to TILA/HOEPA[7] must be dismissed.

      Plaintiff's claims for monetary damages under RESPA and TILA/HOEPA, however, are independent from and not inextricably intertwined with the state court's judgment in the foreclosure proceedings. These claims do not seek to relitigate the foreclosure proceedings but rather seek civil damages for Defendants' alleged failure to comply with the federal statutes at the time of the origination of the underlying Note in August 2003. The state-court foreclosure proceedings have no bearing on the resolution of these federal claims, and the imposition of damages would not impair Defendants' rights under the foreclosure judgment. The state-court judgment establishes the validity of the Note and confers upon Defendants the right to foreclose. A finding by this Court that Plaintiff is entitled to damages for RESPA or TILA/HOEPA violations does not require a finding that the state court was wrong in its judgment. Therefore, the Rooker-Feldman doctrine does not preclude this Court from exercising jurisdiction over these claims. See, e.g., Sanchez v. Onewest Bank, FSB, No. 11 CV 6820, 2013 WL 139870, at *3 (N.D. Ill. Jan. 10, 2013); Perkins v. Beltway Capital, LLC, 773 F. Supp. 2d 553, 559 (E.D. Pa.

---

allege facts sufficient to show such a claim. A claim for IIED must allege conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Guthrie v. Conroy, 567 S.E.2d 403, 408–09 (N.C. Ct. App 2002). Plaintiff has alleged no facts regarding Defendants' actions that would constitute extreme and outrageous conduct; therefore, in the alternative, the Court finds that Plaintiff has failed to state a claim for IIED upon which relief can be granted.

    [7] As Defendants further argue, a borrower's right to rescind under TILA/HOEPA expires "three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first." 15 U.S.C. § 1635(f). This three-year limit, as well as the limit triggered upon the sale of the property, is an absolute time limit that is not tolled for any reason. Jones v. Saxon Mortgage, Inc., 537 F.3d 320, 327 (4th Cir. 1998) (holding that a rescission claim was barred by TILA's three-year statute of repose as well as the sale of the plaintiff's home in foreclosure). Accordingly, Plaintiff's TILA/HOEPA rescission claim, which was asserted over eleven years after the Note was consummated and over one year after the property was sold in foreclosure, is also time-barred.

2011); Carter v. Countrywide Home Loans, Inc., No. 3:07CV651, 2008 WL 4167931, at *4 (E.D. Va. Sept. 3, 2008).

   B. Standing

Insofar as Plaintiff's RESPA and TILA/HOEPA claims seek monetary damages independent of the underlying foreclosure action, the Court now addresses Defendants' Motions under Rule 12(b)(6). Plaintiff asserts a damages claim for RESPA violations. She claims that she is a party to the Note. Specifically, she alleges that she "entered into a consumer credit transaction with [Wells Fargo] by obtaining a $279,900 mortgage loan" and that she executed the Note. (Doc. No. 1 ¶¶29, 33). She also states that her claims are based "upon the facts and circumstances surrounding [Plaintiff]'s original loan transaction and subsequent securitization." (Id. ¶15). Then, she alleges that Defendants failed "to provide Plaintiff with accurate material disclosures required under [the statutes]," that Defendants failed "to disclose that they will gain a financial benefit," and that "payments between the Defendants were misleading and designed to create a windfall," (Id. ¶¶133, 144, 146, 150). She further alleges that Defendants "neither explained the workings of the entire mortgage loan transaction, how the rates, finance charges, costs and fees were computed, nor the inherent volatility of the loan product(s)." (Id. ¶54).

RESPA requires certain disclosures to the loan applicant both at the time of application and upon the assignment, sale, or transfer of a loan, 12 U.S.C. § 2605; prohibits kickbacks and unearned fees, § 2607; and prohibits sellers from requiring a buyer to purchase title insurance from a particular title company, § 2608. Plaintiff fails to cite any specific section of RESPA, but she appears to allege that Defendants violated section 2607, which prohibits a person from giving or accepting kickbacks or unearned fees as part of a transaction involving a federally related mortgage loan. Whatever the specific RESPA claim, however, it must be dismissed.

When considering a motion to dismiss, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine . . . , in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); see also United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency, 745 F.3d 131, 136 (4th Cir. 2014). While a court must accept all factual allegations in the complaint as true, Coleman, 626 F.3d at 189, it need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicted by exhibits, see Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001)). The inquiry, therefore, is whether all of the facts, taken collectively, state a claim, "not whether any individual allegation, scrutinized in isolation, meets that standard." Tellabs, Inc., 551 U.S. at 322.

Here, Defendants have submitted relevant documents associated with the loan, which were referred to in the Complaint, along with public records from the foreclosure proceedings. With the exception of the Note, (Doc. No. 17-2), which Plaintiff seems to contest and, therefore, the Court has not considered, the authenticity of the exhibits is not in dispute, and the Court has considered them where appropriate. Plaintiff alleges in her Complaint that she executed the Note. However, public records in the form of state court orders, of which the Court may take judicial notice, Witthohn v. Fed. Ins. Co., 164 F. App'x 395, 397 (4th Cir. 2006), conclusively establish that Plaintiff did not execute the Note, (Doc. No. 17-7 at 2). As such, the facts, taken collectively, show that Plaintiff did not execute the Note and that she is not a party to the Note.

Generally, "[a] person who is not a party to a contract does not have standing either to seek its enforcement or to bring tort claims based on the contractual relationship." Ambers v.

Wells Fargo Bank, N.A., No. 13-cv-03940-NC, 2014 WL 883752, at *4 (N.D. Cal. Mar. 3, 2014). Furthermore, civil liability under RESPA is limited to borrowers or consumers. Leblow v. BAC Home Loans Servicing, LP, No. 1:12-cv-00246-MR-DLH, 2013 WL 2317726, at *7 (W.D.N.C. May 28, 2013); see also Johnson v. Ocwen Loan Servicing, 374 F. App'x 868, 874 (11th Cir. 2010). Plaintiff is not a borrower or consumer in the contested transaction, rather Plaintiff's husband is the sole borrower. Plaintiff did not sign the Note, and she was not a party to the loan at issue. Accordingly, Plaintiff lacks standing to assert a RESPA claim. See, e.g., Leblow, 2013 WL 2317726 at *7 (finding husband who did not sign note lacked standing to assert a RESPA claim and citing seven other courts holding the same). Consequently, Plaintiff's RESPA claim must be dismissed for failure to state a claim upon which relief can be granted due to her lack of standing.

C. Time-Bar

Next, Plaintiff asserts a generalized claim for violations of TILA and HOEPA, which Defendants argue is time-barred. Generally, a motion to dismiss under Rule 12(b)(6) "cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007). However, courts may determine the merits of an affirmative defense at this stage of litigation if "all facts necessary to the affirmative defense clearly appear[ ] on the face of the complaint." Id. (internal quotation marks omitted). Here, Plaintiff alleges sufficient facts regarding the closing date of the Note to allow the Court to fix certain periods; therefore, all facts necessary to make a determination of the relevant limitations period appear on the face of Plaintiff's Complaint.

Congress passed TILA "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and

avoid the uninformed use of credit." 15 U.S.C. § 1601(a). TILA requires creditors to make certain material disclosures at the time the loan is consummated, and it affords certain rights to damages for violations of these rules. Gilbert v. Residential Funding LLC, 678 F.3d 271, 276 (4th Cir. 2012); see also 15 U.S.C. §§ 1631–32, 1635, 1637–40. As an amendment to TILA, HOEPA "requires lenders to provide borrowers with additional disclosures with respect to certain home mortgages." Dash v. FirstPlus Home Loan Owner Trust 1996-2, 248 F. Supp. 2d 489, 505 (M.D.N.C. 2003). Together, TILA and HOEPA give a consumer a right to bring a claim for civil damages if the creditor failed to make the required disclosures at the time the transaction was consummated. Ward v. Sec. Atl. Mortg. Elec. Registration Sys., Inc., 858 F. Supp. 2d 561, 569 (E.D.N.C. 2012) (citing 15 U.S.C. § 1635(a), (f)); see also Bradford v. HSBC Mortgage Corp., No. 1:09CV1226, 2010 WL 9067298, at *4 (E.D. Va. Sept. 20, 2010). A claim for civil damages under TILA/HOEPA, however, must be brought within one year of the date the loan closed. 15 U.S.C. § 1640(e).

Plaintiff's claim for damages based upon the alleged disclosure violations of TILA/HOEPA relate to the origination of the underlying Note in August 2003. Plaintiff filed her Complaint in March 2015, which was more than eleven years after the loan was consummated and over one year after the property was sold in foreclosure. Accordingly, Plaintiff's damages claim pursuant to TILA/HOEPA is time-barred. As such, Plaintiff's TILA/HOEPA claim must be dismissed for failure to state a claim upon which relief can be granted.

Having determined that all of Plaintiff's claims must be dismissed for the reasons stated above, the Court need not reach Defendants' sixth, seventh, or eighth motions to dismiss.

IV.   CONCLUSION

    **IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motions to Dismiss, (Doc. No. 21), are **GRANTED in part** and **DENIED in part**. Specifically, Plaintiff's claims for lack of standing/wrongful foreclosure; fraud in the concealment; fraud in the inducement; intentional infliction of emotional distress; slander of title; quiet title; declaratory relief; and rescission pursuant to TILA/HOEPA are **DISMISSED** for lack of subject-matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1). Plaintiff's claims for civil damages under RESPA and TILA/HOEPA are **DISMISSED** for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).
2. Plaintiff's Complaint, (Doc. No. 1), is **DISMISSED with prejudice**;
3. Plaintiff's Motion for Declaratory Relief, Injunction, and Temporary Restraining Order, (Doc. No. 2), is **DISMISSED as moot**;
4. Defendants' Motion to Strike, (Doc. No. 26), is **DISMISSED as moot**; and
5. The Clerk of Court is directed to close this case.

Signed: January 5, 2016

Robert J. Conrad, Jr.
United States District Judge